USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___2/5/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FOLKES HOME SERVICES
HEATING, COOLING, PLUMBING
& ELECTRICAL, LLC, a Delaware
Limited Liability Company,

                    Plaintiff,

-against-

FOLKES BROTHERS HOME
SERVICES LLC, a New York Limited
Liability Company, DUSTIN
FOLKES, JR., and TYLER FOLKES,

                    Defendants.

24 CV 9844 (NSR)

OPINION & ORDER

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

Plaintiff Folkes Home Services Heating, Cooling, Plumbing & Electrical, LLC ("Plaintiff" or "Folkes") brings this action against Defendants Folkes Brothers Home Services LLC, Dustin Folkes, Jr., and Tyler Folkes (collectively, "Defendants"), asserting claims for trademark infringement and unfair competition under the Lanham Act and New York common law, dilution under New York General Business Law ("N.Y. Gen. Bus. Law") § 360-l ("§ 360-l,"), use of a name with intent to deceive under New York General Business Law § 133 ("§ 133"), and unjust enrichment. (Compl., ECF No. 1; Dfts. Mem. at 5, ECF No. 25.)

Presently before the Court is Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike certain allegations pursuant to Rule 12(f). For the reasons that follow, the motion to dismiss is GRANTED in part and DENIED in part, and the motion to strike is DENIED. (*See generally* Mot., ECF No. 24.)

1

## BACKGROUND

### A.  FACTUAL BACKGROUND

The following facts are derived from the Complaint and are accepted as true and construed in the light most favorable to Plaintiff for purposes of this motion.

Plaintiff provides residential and commercial plumbing, heating, ventilation, air conditioning, boiler, and water heater installation and maintenance services to customers throughout the Hudson Valley region. (Compl. ¶ 10.) In November 2024, Plaintiff acquired Folkes Home Services, Inc.—a New York corporation founded in 1998—pursuant to an Asset Purchase Agreement through which Plaintiff obtained the entirety of that business, including its operations, assets, and goodwill. (*Id.* ¶ 11.)

Plaintiff owns the trademarks FOLKES HOME SERVICES and FOLKES (collectively, the "Plaintiff's Marks"), including associated logos, which are used in connection with Plaintiff's HVAC and plumbing services. (Compl. ¶ 12.) Plaintiff, including through its predecessor-in-interest, has continuously used the Plaintiff's Marks in interstate commerce since at least 1999. (*Id.*) Plaintiff is the owner of U.S. Trademark Application Serial No. 98754120 for FOLKES HOME SERVICES, filed on September 17, 2024, with a claimed first use in commerce of June 9, 1999, covering HVAC and plumbing services. (*Id.* ¶ 13.) Plaintiff also owns U.S. Trademark Application Serial No. 98756238, filed on September 18, 2024, with a claimed first use in commerce of August 14, 2020, covering similar services. (*Id.* ¶ 14.)

Through its acquisition of Folkes Home Services, Inc., Plaintiff holds all rights, benefits, and interests of its predecessor-in-interest, including all intellectual property rights associated with the Plaintiff's Marks. (Compl. ¶ 15.) For more than twenty-six years, Plaintiff and its predecessor have made substantially exclusive and continuous use of the Plaintiff's Marks, investing heavily

in advertising and promotion and generating millions of dollars in revenue and substantial consumer recognition. (*Id*. ¶¶ 16–18.) Plaintiff has marketed its services through direct mail campaigns, local newspapers, its website, and an active Facebook presence, and operates a fleet of approximately forty-five service vehicles bearing the Plaintiff's Marks. (*Id*. ¶¶ 19–21.) Plaintiff's employees wear apparel displaying the Marks while servicing customers, and customers often permit Plaintiff to place lawn signs displaying the Marks following service visits. (*Id*. ¶¶ 22–23.)

Plaintiff's services have received public recognition, including being voted "Best of the Hudson Valley" by *Hudson Valley Magazine* in 2023. (Compl. ¶ 24.) They also maintain thousands of Google reviews with an average rating of approximately 4.8 stars. (*Id*. ¶ 25.) Plaintiff promotes its services at regional events, including the Hudson Valley Home Show, and participates in the local community through charitable donations and sponsorships. (*Id*. ¶¶ 26–27.) Plaintiff further enters into recurring service contracts with customers, many of which result in long-term client relationships. (*Id*. ¶ 28.) Through these activities, Plaintiff alleges that its Marks became strong and distinctive source identifiers well before Defendants' alleged conduct. (*Id*. ¶ 29.)

Defendants Dustin Folkes and Tyler Folkes subsequently formed a competing business, Folkes Brothers Home Services LLC, and adopted the marks FOLKES BROTHERS HOME SERVICES and FOLKES BROTHERS (the "Infringing Marks") to allegedly offer services identical or nearly identical to Plaintiff's services. (Compl. ¶ 30.) Plaintiff alleges that it attempted to resolve the dispute prior to commencing this action, but Defendants continued to operate under the Infringing Marks. (*Id*. ¶ 31.) Plaintiff and Defendants' logos are featured below:

   (Dfts. Reply at 1.)

3

Defendants have used and continue to use the Infringing Marks without authorization in connection with the advertising and provision of their services. (Compl. ¶ 32.) Plaintiff alleges that the Infringing Marks are identical or confusingly similar to the Plaintiff's Marks in appearance, sound, meaning, and overall commercial impression, and that Defendants offer identical or closely related services in overlapping geographic markets. (*Id.* ¶¶ 33–35.) According to the Complaint, Defendants market those services through overlapping channels of trade, including websites and social media, and their use of the Infringing Marks trades on Plaintiff's goodwill and has caused, and is likely to continue to cause, consumer confusion as to source, sponsorship, or affiliation. (*Id.* ¶¶ 36–39.)

Defendants are the children of the late founder of Plaintiff's predecessor-in-interest and were formerly employed by Plaintiff's predecessor. (Compl. ¶ 40.) Prior to their termination in June 2024, Dustin Folkes served as General Manager and Tyler Folkes served as HVAC Service Manager, positions in which they allegedly had access to Plaintiff's proprietary information, including customer lists, marketing plans, service contracts, and financial data. (*Id.* ¶¶ 41–42.) Defendants were familiar with and serviced customers under Plaintiff's service contracts and are alleged to have contacted Plaintiff's customers in an effort to divert business. (*Id.* ¶¶ 43–44.)

Defendants formed Folkes Brothers Home Services LLC on June 12, 2024, selected that name allegedly to appropriate the goodwill associated with Plaintiff's Marks, and offer services under the Infringing Marks in the same geographic areas as Plaintiff, including Dutchess, Orange, Putnam, and Ulster Counties. (Compl. ¶¶ 45–46.) Defendants promote their services through the website *folkesbrothers.com* and a Facebook page describing the business as a "rebrand," with posts referring to the business as "Folkes Brothers Home Services" and suggesting continuity with their father's legacy. (*Id.* ¶¶ 47–50.)

4

Plaintiff further alleges that customers have posted reviews for Defendants on Plaintiff's Google review page, mistakenly scheduled service calls with both businesses, and that Plaintiff has encountered Defendants' representatives at customer locations. (Compl. ¶¶ 51–52.) For example, on at least one occasion, Plaintiff arrived for a scheduled service call only to find Defendants' representative already present. (*Id*. ¶ 52.) Despite knowledge of Plaintiff's longstanding use of the Marks, Defendants continued offering services under the Infringing Marks, acting with reckless disregard for—or willful blindness to—Plaintiff's rights. (*Id*. ¶ 53.)

Defendants allegedly instructed suppliers and vendors who also work with Plaintiff to charge Defendants' materials to Plaintiff's accounts, causing Plaintiff to bear the cost of supplies for Defendants' operations. (Id. ¶ 54.) They further attempted to access Plaintiff's Home Depot contractor account on October 30, 2024, as shown by a sign-in alert from a device near Hopewell Junction, New York—where Defendants maintain a business address and where Dustin Folkes resides. (*Id*. ¶ 55.) These acts were allegedly directed and authorized by Dustin Folkes and Tyler Folkes. (*Id*. ¶ 56.)

**Summary of Causes of Action**

Based on Defendants' use of the marks FOLKES BROTHERS HOME SERVICES and FOLKES BROTHERS in connection with HVAC and plumbing services, Plaintiff asserts five claims for relief: (1) trademark infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) dilution under New York General Business Law § 360-l; (3) trademark infringement and unfair competition under New York common law; (4) use of a name with intent to deceive under New York General Business Law § 133; and (5) unjust enrichment under New York common law. (Compl. ¶¶ 57–118; Dfts. Mem. at 5, ECF No. 25.)

As to its federal claims, Plaintiff alleges that Defendants use marks that are identical or substantially indistinguishable from Plaintiff's Marks to offer identical or closely related services in overlapping markets and through the same channels of trade, creating a likelihood of consumer confusion as to source, sponsorship, or affiliation. (Compl. ¶¶ 58–63.) Plaintiff further alleges that Defendants adopted the Infringing Marks with knowledge of Plaintiff's Marks, promoted their services as a "rebrand," and thereby caused actual and likely consumer confusion, loss of goodwill, and irreparable harm. (*Id.* ¶¶ 66–73, 75–78.) Plaintiff's state-law claims arise from the same conduct and assert that Defendants' unauthorized use of confusingly similar marks dilutes their distinctive quality, misappropriates Plaintiff's goodwill, falsely suggests affiliation or continuation of Plaintiff's business, and unjustly enriches Defendants, causing ongoing harm for which no adequate remedy at law exists. (*Id.* ¶¶ 81–118.)

## B. PROCEDURAL HISTORY

On December 20, 2024, Plaintiff commenced this action against Defendant. (Compl., ECF No. 1.) On May 27, 2025, Defendants moved to dismiss the Complaint and to strike certain allegations, filing a memorandum in support. (Dfts. Mot., ECF No. 24; Dfts. Mem., ECF No. 25.) Plaintiff subsequently filed an opposition and Defendants filed a reply. (Pltf. Opp., ECF No. 28; Dfts. Reply, ECF No. 29.)

## LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court

6

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Additionally, Courts may take judicial notice of certain publicly available documents. *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that courts may "look to public records, including complaints filed in state court, in deciding a motion to dismiss"). The Court may take judicial notice of official records from the United States Patent and Trademark Office and the United States Copyright Office. *See Island Software and Comput. Serve., Inc. v. Microsoft Corp*., 413 F.3d 257, 261 (2d Cir. 2005) (copy right registration); *Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 n.2 (8th Cir. 1996 (trademark registration).

**B. 12(f) Motion to Strike**

Under Rule 12(f), a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Such motions are strongly disfavored and are granted only in the rare circumstance where the challenged allegations have no possible bearing on the claims or defenses and their inclusion would cause prejudice to the moving party. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (cautioning that Rule 12(f) should not be used to test the sufficiency of allegations).

## DISCUSSION

For the reasons set forth below, the Court DENIES Defendants' motion to dismiss as to Plaintiff's Lanham Act claim, New York common law unfair competition claim, and dilution claim under N.Y. Gen. Bus. Law § 360-l and GRANTS the motion as to Plaintiff's claims under N.Y. Gen. Bus. Law § 133 and for unjust enrichment. The Court further DENIES Defendants' motion to strike.

**A. Trademark Infringement and Unfair Competition Under the Lanham Act and New York Common Law**

Plaintiff's first and third claims for relief arise under Section 43(a) of the Lanham Act and New York common law. Defendants move to dismiss under Rule 12(b)(6), arguing that Plaintiff has not plausibly alleged trademark infringement. (*See generally* Compl.) The Court disagrees.

Section 43(a) of the Lanham Act prohibits the use in commerce of any word, name, symbol, or device, or false designation of origin, that is likely to cause confusion as to the affiliation, source, sponsorship, or approval of goods or services. 15 U.S.C. § 1125(a). To state a claim for trademark infringement, a plaintiff must plausibly allege (1) that it has a valid "mark entitled to protection", and (2) that the "defendant's use of the mark is likely to cause consumer confusion as to the origin

8

or sponsorship of the defendant's goods." *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 486 (S.D.N.Y. 2008) (quoting *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003)).

The elements of "trademark infringement and unfair competition under New York common law largely mirror" those under the Lanham Act, except that a common law unfair competition claim additionally requires bad faith. *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005). Although "bad faith" under the Lanham Act is one of several *Polaroid* factors considered in assessing likelihood of confusion, it is an independent and indispensable element of a New York common law unfair competition claim. *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12 Civ. 5105 (NRB), 2014 WL 3950897, at *9 (S.D.N.Y. Aug. 13, 2014).

Accordingly, the Court analyzes the federal and state claims under the same framework, with the added requirement of bad faith for the common law claim. At the pleading stage, the Court does not resolve factual disputes or weigh evidence but asks only whether the complaint alleges sufficient facts to raise a reasonable expectation that discovery will reveal evidence supporting the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### i.    *Protectability of the Mark*

Plaintiff plausibly alleges that the FOLKES and FOLKES HOME SERVICES marks are protectable. Trademark rights arise from use, not registration, and an unregistered mark is entitled to protection under § 43(a) of the Lanham Act if it is distinctive, either inherently or through acquired distinctiveness. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 418 (2d Cir. 2018). Accordingly, an unregistered mark is protectable so long as it is "capable of distinguishing the

9

applicant's goods [or services] from those of others." *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 217 (2d Cir. 2003).

Defendants' contention that the marks are weak because "Folkes" is a surname does not defeat protectability at this stage.[1] (Dfts. Mem. at 14-15.) Surnames are not categorically unprotectable and may acquire distinctiveness through secondary meaning when, through use, they come to identify a single source rather than merely an individual's name. *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583-84 (2d Cir. 1990) (noting that surnames may not be registered without proof of secondary meaning); 2 McCarthy, *Trademarks and Unfair Competition, § 13:2* (5th ed.) (explaining that for surname marks, the Lanham Acts requires proof of a secondary meaning). Where a surname has achieved such source-identifying significance, "the interest in allowing an entrepreneur to use his own surname … must give way" to the public interest in avoiding consumer confusion. *Ford Motor Co. v. Ford*, 462 F.2d 1405, 1407 (C.C.P.A. 1972), *cert. denied*, 409 U.S. 1109 (1973).

The allegations here plausibly establish that result. The marks have been used continuously and substantially exclusively for more than two decades in the same line of business and geographic market; they have been promoted extensively through advertising, branded vehicles, uniforms, signage, and digital media; and they are alleged to enjoy widespread consumer recognition, including industry awards and thousands of favorable customer reviews. (Compl. ¶¶ 11–12, 15–25.). These allegations plausibly support that, in the minds of consumers, "FOLKES" no longer denotes a surname alone, but instead identifies a particular source of HVAC and

---

[1] Defendants raise a statutory fair use defense under 15 U.S.C. § 1115(b)(4) for the first time in their reply brief. (Dfts. Reply at 4.) Because fair use is an affirmative defense that must be pleaded, *see Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013); Fed. R. Civ. P. 8(c), and because arguments raised for the first time in a reply brief are not properly before the Court, the Court declines to consider it. *See Lavin v. United States*, 299 F.3d 123, 126 n.1 (2d Cir. 2002); *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 21-847, 2022 WL 480475, at *3 (2d Cir. Feb. 17, 2022).

plumbing services. That is sufficient to plead secondary meaning for a surname mark at the Rule 12(b)(6) stage.

Nor does the inclusion of the phrase "Home Services" render the composite mark unprotectable. (Dfts. Mem. at 7-8.)  Composite marks must be evaluated as a whole, not dissected into their individual components. *In re Hutchinson Tech. Inc.*, 852 F.2d 552, 554 (Fed. Cir. 1988); *Est. of P.D. Beckwith, Inc. v. Comm'r of Pats.*, 252 U.S. 538, 545–46 (1920). Although "Home Services" is descriptive, the relevant question is whether the composite FOLKES HOME SERVICES, taken in its entirety, functions as a source identifier in the marketplace. On the pleaded facts, it plausibly does. The mark conveys not merely the nature of the services offered, but a specific commercial origin associated with long-standing use, promotion, and consumer recognition. (Compl. ¶¶ 18, 19- 25.)

Accordingly, Plaintiff has plausibly alleged that the Marks are capable of protection under the Lanham Act and New York common law. Because the Marks are not inherently distinctive, however, their protectability ultimately turns on whether Plaintiff has plausibly pleaded secondary meaning—a question addressed below.

ii.    *Secondary meaning*

Due to a lack of inherent distinctiveness, Plaintiff must successfully plead secondary meaning. "To establish secondary meaning, a [plaintiff] must show that, in the minds of the public, the primary significance [of the mark] . . . is to identify the source of the [service] rather than the [service] itself." *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 851 n.11 (1982) (citing *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938)). And the mark must have acquired secondary meaning before the alleged infringer began its use. *See PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 564 (2d Cir. 1990) (requiring secondary meaning to predate defendant's use).

Whether secondary meaning exists is "an inherently factual inquiry." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 226 (2d Cir. 2012) (quoting *Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 993 (2d Cir. 1987)). As a result, courts routinely decline to resolve secondary meaning on a motion to dismiss, where the task is to assess plausibility—not to weigh competing evidence. *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 213 (S.D.N.Y. 2015); *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

Courts in this Circuit assess secondary meaning by considering factors such as "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of use." *Christian Louboutin S.A.*, 696 F.3d at 226. While consumer surveys are often the most persuasive evidence, they are not required at the pleading stage, and no single factor is dispositive. *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 638 (S.D.N.Y. 2016); *A.V.E.L.A.,* 131 F. Supp. 3d at 212.

Applying these principles, Plaintiff plausibly pleads acquired distinctiveness. The Complaint alleges decades of continuous and substantially exclusive use of the FOLKES marks in connection with the same HVAC and plumbing services—first by Plaintiff's predecessor and later by Plaintiff following the asset purchase. (Compl. ¶¶ 11–12, 15.) Such long-standing and exclusive use, particularly within the same line of business and geographic market, strongly supports secondary meaning at the pleading stage. *See Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 350 (S.D.N.Y. 2014).

Plaintiff further alleges sustained advertising and promotion across multiple channels, including direct mail campaigns, local newspapers, a website and social media presence, branded service vehicles, employee uniforms, and lawn signage. (Compl. ¶¶ 19–23.) These allegations support a reasonable inference that consumers were repeatedly exposed to the FOLKES marks as

source identifiers rather than mere descriptors, satisfying the advertising and media-exposure factors courts consider in assessing secondary meaning. Plaintiff also pleads substantial sales success and widespread consumer recognition, including millions of dollars in revenue, thousands of customer reviews, and unsolicited accolades such as being voted "Best of the Hudson Valley." (*Id.* ¶¶ 18, 24–25.) Such allegations plausibly support the conclusion that consumers associate the FOLKES marks with a single source of services. *See A.V.E.L.A.*, 131 F. Supp. 3d at 213.

Finally, Plaintiff alleges circumstances consistent with the appropriation of goodwill—namely, that Defendants adopted highly similar marks after years of exposure to Plaintiff's branding and customer base. (Compl. ¶¶ 16, 32, 36, 41.) Specifically, Defendants formed Folkes Brothers Home Services LLC on June 12, 2024, chose that name to trade on Plaintiff's reputation, and offer services in the same areas, including Dutchess, Orange, Putnam, and Ulster Counties. (*Id.* ¶¶ 45–46.) They also promote their services through a Facebook page describing the business as a "rebrand". (*Id.* ¶¶ 47–50, 72.) These allegations support a reasonable inference of secondary meaning, showing that Defendants targeted Plaintiff's established commercial identity. *See Christian Louboutin*, 696 F.3d at 226 (attempts to plagiarize a mark support secondary meaning).

Defendants' contrary arguments—that Plaintiff lacks survey evidence, that the marks are descriptive, or that consumer recognition is overstated—go to the ultimate evidentiary showing, not plausibility. (Dfts. Mem. at 4, 7-8, 10-11.) At the pleading stage, Plaintiff is not required to prove secondary meaning or negate alternative explanations; it need only allege facts that make the inference reasonable. *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 347–49 (S.D.N.Y. 2014) (denying motion to dismiss claim for trademark infringement where "defendants essentially raise a dispute of fact" regarding whether the complaint alleged secondary meaning). Discovery may ultimately confirm or undermine Plaintiff's showing, but resolving those disputes now would

13

improperly collapse a fact-intensive inquiry into a Rule 12(b)(6) motion. *See A.V.E.L.A*, 131 F. Supp. 3d at 213.

Accordingly, Plaintiff's allegations squarely implicate the core secondary-meaning factors—longstanding and exclusive use, extensive advertising and marketplace exposure, substantial sales success, public recognition, and indicia of goodwill appropriation—each of which weighs in favor of secondary meaning at the pleading stage. *See Christian Louboutin*, 696 F.3d at 226; *A.V.E.L.A.,* 131 F. Supp. 3d at 212–13.

### iii.    *Likelihood of Confusion*

Plaintiff also plausibly alleges a likelihood of consumer confusion. To state a claim under § 43(a), a plaintiff must plausibly allege that the defendant's use of the mark is "likely to cause consumers confusion as to the origin, sponsorship, or approval of the defendant's goods or services." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). Likelihood of confusion is assessed under the *Polaroid* factors, which considers: (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the proximity of the parties' goods or services; (4) the likelihood that the senior user will bridge the gap; (5) evidence of actual confusion; (6) the junior user's bad faith; (7) the quality of the parties' goods or services; and (8) the sophistication of the relevant consumers. *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

The Second Circuit has emphasized that these factors are not applied mechanically and that no single factor is dispositive; rather, courts must engage in a contextual, fact-specific inquiry, explaining why any factor is irrelevant where appropriate. *Int'l Info. Sys. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 165 (2d Cir. 2016). Because this inquiry is "fact-intensive," it is generally inappropriate for resolution at the pleading stage. *Van Praagh v. Gratton*, 993 F.

Supp. 2d 293, 303 (E.D.N.Y. 2014); *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006).

Applying these principles, the Court finds that Plaintiff has adequately pleaded a likelihood of confusion between its Marks and Defendants' Infringing Marks. The Court addresses each *Polaroid* factor in turn.

### 1.  Strength of the Marks

Stronger marks are entitled to broader protection. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987). In the Second Circuit, a mark's strength is evaluated based on two components: "(1) the degree to which it is inherently distinctive; and (2) the degree to which it has achieved public recognition in the marketplace, sometimes called acquired strength". *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 120 (2d Cir. 2022).

Although the Marks are descriptive, the Complaint plausibly supports substantial acquired strength. It pleads more than two decades of continuous and substantially exclusive use of the FOLKES Marks in connection with HVAC and plumbing services (dating back to 1999), extensive advertising across multiple channels, a large base of repeat customers, thousands of favorable consumer reviews, and significant name recognition throughout the Hudson Valley region. (Compl. ¶¶ 12, 16–29.) It further describes a fleet of approximately forty-five branded service vehicles, employee uniforms bearing the Marks, lawn signage left at customer residences, long-term service contracts, and recognition as "Best of the Hudson Valley," all reinforcing the Marks' function as source identifiers. (*Id.* ¶¶ 21–28, 42.) As previously mentioned, Defendants' contention that the Marks are "weak" because they incorporate a surname raises a factual dispute inappropriate for resolution at this stage. (Dfts. Mem. at 14-15); *McAllister Olivarius v. Mermel,* 298 F. Supp. 3d 661, 670 (S.D.N.Y. 2018) ("[D]etermining whether a descriptive mark has

acquired secondary meaning is a fact-intensive inquiry" that is "ill-suited for resolution at the motion to dismiss stage.").

Taken together, these allegations plausibly establish secondary meaning and weigh in favor of a likelihood of confusion. *Virgin Enters,* 335 F.3d at 147.

### 2. Similarity of the Marks

In assessing this factor, courts consider two primary questions: "(1) whether the similarity between the marks is likely to cause consumer confusion, and (2) what effect that similarity has on the perceptions and purchasing decisions of prospective consumers." *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 962 (2d Cir. 1996) (citing *McGregor-Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1133 (2d. Cir. 1979)). The analysis focuses on the marks' overall commercial impression—including sight, sound, and meaning—rather than a side-by-side comparison. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 117 (2d Cir. 2006).

The pleaded facts plausibly establish similarity. Defendants' marks incorporate the dominant, source-identifying term "FOLKES," preserve the same word order, and differ only by the addition of the non-distinctive modifier "BROTHERS." (Compl. ¶¶ 62, 98.) Defendants also use "FOLKES BROTHERS HOME SERVICES," closely tracking Plaintiff's composite mark and reinforcing the impression of a shared source. (*Id*. ¶¶ 30, 45–46; Pltf Opp. at 4-5.) Because the first portion of a mark is "most likely to be impressed upon the mind of a purchaser and remembered," emphasis on "FOLKES"—the dominant brand identifier—heightens the risk of confusion. *Presto Prods. Inc. v. Nice-Pak Prods. Inc.*, 9 U.S.P.Q.2d 1895 (T.T.A.B. 1988); *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993). The addition of "BROTHERS" does not meaningfully distinguish the marks, particularly where the services are identical.

16

*Morningside Grp. Ltd. v. Morningside Cap. Grp.*, 182 F.3d 133, 140 (2d Cir. 1999); *In re Charger Ventures LLC*, 64 F.4th 1375, 1382 (Fed. Cir. 2023).

Moreover, both marks convey the same essential idea: a family-operated home services business. "Closeness in meaning can itself substantiate a claim of similarity." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 352 (9th Cir. 1979). This factor therefore weighs in favor of confusion.

### 3. Proximity of the Services

The proximity factor examines whether and to what extent the two products compete with each other." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996). "When two parties 'provide essentially the same service to the same customer base' their services are proximate, this element thus weighs in favor of finding a likelihood of confusion." *WE Media, Inc. v. Gen. Elec. Co.*, 218 F. Supp. 2d 463, 477 (S.D.N.Y. 2002) (quoting *Morningside Grp. Ltd*, 182 F.3d at 140).

Here, the Complaint describes direct competition: Defendants provide identical HVAC and plumbing services in overlapping geographic markets and target the same residential and commercial customers. (Compl. ¶¶ 30, 35, 46.) It further alleges that Defendants formed their business shortly after leaving Plaintiff's predecessor and immediately began offering the same services in Dutchess, Orange, Putnam, and Ulster Counties. (*Id*. ¶¶ 41, 45–46.) In at least one instance, Plaintiff's technician arrived at a service call only to find Defendants' representative already at the customer's residence. (*Id*. ¶ 52.)

These allegations demonstrate direct competition and geographic overlap, strongly supporting a likelihood of consumer confusion.

### 4. Bridging the Gap

"Bridging the gap" refers to the likelihood that the senior user will enter the junior user's market in the future or that consumers will perceive the senior user as likely to do so. *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005). Because the parties already operate in the same market, this factor is neutral. When products are in "competitive proximity," there is no gap to bridge, making this factor irrelevant to the *Polaroid* analysis. *Id*.

### 5. Evidence of Actual Confusion

"It is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986). Although actual confusion is not required, allegations of concrete instances of confusion are highly probative. *Virgin Enters.*, 335 F.3d at 151.

The Complaint sets forth specific instances of actual confusion, including misdirected Google reviews attributing Defendants' work to Plaintiff, mistaken service scheduling, and consumer confusion regarding affiliation. (Compl. ¶¶ 39, 51–52.) Customers are alleged to have booked appointments with both companies under the belief that the businesses were related, and in at least one instance, Plaintiff arrived at a scheduled service call only to find Defendants already present. (*Id*. ¶ 52.) At the pleading stage, these factual allegations plausibly support actual confusion. *W. E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 662 (2d Cir. 1970).

### 6. Defendants' Bad Faith

"Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Star Indus.*, 412 F.3d at 388. A finding of good faith may be supported

18

by, among other things, "[s]election of a mark that reflects the [service's] characteristics." *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991). Prior knowledge of a senior user's trademark does not necessarily give rise to an inference of bad faith. *Id.* at 583–84.

Plaintiff's allegations, taken as true, support a plausible inference of bad faith. Defendants' assertion that they acted in good faith by using their surname and the term "BROTHERS" is undermined by Plaintiff's specific allegations of misconduct. (Dfts. Mem. at 14-15.) Plaintiff alleges that Defendants instructed suppliers to bill purchases to Plaintiff's account, thereby shifting the cost of materials used in Defendants' operations onto Plaintiff. (Compl. ¶ 54.) Additionally, Plaintiff asserts that on October 30, 2024, Defendants attempted to access Plaintiff's online Home Depot account from Hopewell Junction, New York, where Defendants maintain a business address and Dustin Folkes maintains a residence. (*Id.* ¶ 55.) Defendants confirm that their principal place of business is Hopewell Junction, New York. (Dfts. Mem. at 2.) These allegations support a plausible inference that Defendants sought to misappropriate Plaintiff's goodwill for their own commercial benefit.

### 7.  Quality of Services

Where services are of comparable quality, confusion is more likely, not less. *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 461 (2d Cir. 2004).

Here, Plaintiff does not allege that Defendants' services are inferior. To the contrary, the pleadings and Defendants' own admissions indicate that both parties provide services of comparable quality. Plaintiff operates the business originally founded under the FOLKES name, while Defendants—members of the founding family—likewise assert a strong interest in maintaining the reputation and goodwill associated with that surname in the home services industry. (Compl. ¶¶ 11, 16.)  Indeed, Defendants themselves contend that customers "have come

to trust them for their home services needs based on their reputation for exceptional customer service." (Dfts. Reply at 2–3.)

Where, as here, competing services are of approximately equal quality, consumers are more likely to assume a common source or affiliation. *Savin Corp.*, 391 F.3d at 461. Accordingly, this factor weighs in favor of a likelihood of confusion.

### 8.   Consumer Sophistication

Consumer sophistication "consider[s] the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Sports Auth.*, 89 F.3d at 965 (internal quotation marks and alteration omitted). Courts generally assume that more sophisticated consumers are less likely to be confused by similar marks. *Savin Corp.*, 391 F.3d at 461. Where products or services are expensive, courts often infer that consumers are more discerning in their purchasing decisions. However, even in such cases, confusion can still be likely if consumers are unfamiliar with the market or the specific goods or services in question. *See Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 43 (2d Cir. 2016).

In the home maintenance context, although services such as HVAC installation and plumbing repairs can be costly—potentially suggesting a higher degree of consumer care—this inference is limited by the realities of the market. As courts have recognized, the average homeowner lacks specialized technical knowledge and is therefore not well positioned to distinguish between similarly branded service providers. *See Lion-Aire Corp. v. Lion Air Installation, Inc.*, 747 F. Supp. 3d 488, 514 (E.D.N.Y. 2024) (acknowledging that high-cost services may prompt caution); *Home Comfort Heating & Air Conditioning, Inc. v. Ken Starr, Inc.*, No. 818CV00469, 2018 WL 3816745, at *8 (C.D. Cal. July 24, 2018) (noting that when "almost

everyone in Southern California" requires HVAC services, the target market are average consumers, not experts).

Moreover, HVAC and plumbing services are frequently sought under time-sensitive or emergency conditions, further diminishing the likelihood of careful deliberation. In such circumstances, consumers often rely on brand familiarity or name recognition rather than detailed comparison, increasing the risk of confusion when marks are similar. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 117 (2d Cir. 2009). Because the record concerning consumer sophistication remains undeveloped at this stage, and because the pleaded facts plausibly support competing inferences, the Court treats this factor as neutral.

Taken together, however, the *Polaroid* factors plausibly support a likelihood of consumer confusion. Accordingly, Plaintiff has adequately stated claims for trademark infringement and unfair competition under Section 43(a) of the Lanham Act and New York common law. Because New York common law trademark infringement and unfair competition claims mirror those under the Lanham Act, and because the Complaint plausibly alleges bad faith for the reasons set forth in the Court's federal trademark analysis, Plaintiff has also stated claims under New York common law. *See Lopez v. Adidas Am., Inc.*, 2020 WL 2539116, at *15 (S.D.N.Y. May 19, 2020); *see also SLY Magazine, LLC v. Weider Publ'ns*, 529 F. Supp. 2d 425, 443 (S.D.N.Y. 2007); *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 190 (S.D.N.Y. 2009) ("Once a defendant has been shown to have committed infringement under the Lanham Act, "he has necessarily also done so under New York State and common law.").

Defendants' motion to dismiss these claims is therefore DENIED.

**B.  N.Y. Gen. Bus. Law § 360-1**

Plaintiff states a viable claim for trademark dilution under N.Y. Gen. Bus. § 360-l. The statute protects marks whose distinctive quality is likely to be diluted—by blurring or tarnishment—through another's use, "notwithstanding the absence of competition or confusion." N.Y. Gen. Bus. Law § 360-l. The touchstone of the analysis is whether the challenged conduct threatens to impair the mark's ability to function as a unique identifier of source. *Coty Inc. v. Excell Brands LLC*, 277 F. Supp. 3d 425, 460 (S.D.N.Y. 2017).

As explained in the Court's infringement analysis, the FOLKES and FOLKES HOME SERVICES marks are alleged to have acquired distinctiveness through decades of continuous and substantially exclusive use, extensive advertising and marketplace exposure, significant sales success, and strong consumer recognition within the Hudson Valley. (Compl. ¶¶ 16–29.) At the pleading stage, those allegations are sufficient to establish the degree of distinctiveness required for protection under § 360-l. *Fireman's Ass'n of State of N.Y. v. French Am. Sch. of N.Y.*, 41 A.D.3d 925, 927 (2d Dep't 2007).

The Complaint also adequately pleads a likelihood of dilution by blurring. 2021). Courts evaluating blurring consider the *Mead Data* factors, including similarity of the marks, similarity of the products, consumer sophistication, predatory intent, and the relative renown of each mark. *Mead Data Cent., Inc. v. Toyota Motor Sales*, 875 F.2d 1026, 1031 (2d Cir. 1989); *see also Landscape Forms*, 117 F. Supp. 2d at 370 (observing overlap between the *Mead Data* and *Polaroid* analyses.) These factors inform—rather than replace—the ultimate question: whether the junior use is likely to diminish the senior mark's source-identifying power. *Coty*, 277 F. Supp. 3d at 460.

Here, the pleaded facts support that inference. Defendants are alleged to use marks that closely resemble Plaintiff's in sight, sound, and meaning for identical HVAC and plumbing

22

services, in the same geographic market, and directed to the same class of consumers. (Compl. ¶¶ 36–39, 46.) As already discussed, the marks are highly similar, the services directly overlap, and Defendants are alleged to have acted with knowledge of Plaintiff's marks and goodwill. (*Id.*) Those circumstances create a concrete risk that continued use of the challenged marks will "whittle away" the distinctiveness of Plaintiff's marks by associating them with multiple sources. *Allied Maint. Corp. v. Allied Mech. Trades, Inc.*, 42 N.Y.2d 538, 545 (1977).

Defendants argue that Plaintiff's New York dilution claim fails because Plaintiff has not alleged a mark sufficiently strong to warrant protection under N.Y. Gen. Bus § 360-l. (Dfts. Mem. at 14-15.) That argument overstates the statute's requirements at the pleading stage. Section 360-l does not require federal-style fame, household-name status, or universal public recognition; rather, a plaintiff must plausibly allege that its mark is distinctive—either inherently or through secondary meaning—and that a junior user's conduct is likely to dilute the mark's source-identifying capacity. *SLY Magazine,* 529 F. Supp. 2d at 443–44  (holding that § 360-l requires distinctiveness, not federal fame, and declining to dismiss dilution claim at Rule 12 stage); *Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 261–62 (E.D.N.Y. 2021); *see also Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42 (2d Cir. 1994) (explaining that New York dilution protects against blurring of a mark's selling power). At this stage, Plaintiff need only plausibly allege distinctiveness and a likelihood of dilution, not prove that its mark is "extremely strong" as a matter of law. *Friesland Brands, B.V. v. Vietnam Nat. Milk Co.*, 228 F. Supp. 2d 399, 413–14 (S.D.N.Y. 2002). Plaintiff's allegations satisfy that standard.

Taken together, the Complaint alleges facts sufficient to support a reasonable inference that Defendants' use of the challenged marks risks diminishing the distinctiveness and identifying power of Plaintiff's marks. Plaintiff's dilution claim under § 360-l therefore survives dismissal.

**C. N.Y. Gen. Bus. Law § 133**

Plaintiff's claim, use of a name with intent to deceive under N.Y. Gen. Bus. Law § 133, fails as a matter of law and is dismissed with prejudice. Section 133 prohibits the use of another's name as a corporate or trade name "with intent to deceive or mislead the public" as to the identity of a business or its connection to another entity. N.Y. Gen. Bus. Law § 133. To state a claim under § 133, a plaintiff must plausibly allege that the defendant (1) used a name that is deceptive as to identity, and (2) did so in bad faith with intent to mislead the public. *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 190 (S.D.N.Y. 2009). In addition, courts require allegations that the public is likely to confuse the defendant's name itself with that of the plaintiff. *Spytown.com, Inc. v. Queens Spy Shop*, 958 N.Y.S.2d 311 (Sup. Ct. 2010).

Here, the Complaint does not plausibly allege deceptive use of Plaintiff's corporate or trade name within the meaning of § 133. Rather, the gravamen of Plaintiff's allegations concerns the use of confusingly similar marks and branding in connection with competing services—conduct squarely addressed by trademark infringement and unfair competition law, not § 133. *See L & L Wings*, 676 F. Supp. 2d at 190. Critically, the Complaint contains no facts supporting an inference that Defendants intended to mislead the public as to their true identity. To the contrary, it is undisputed that "Folkes" is Defendants' surname, which defeats any claim that the name was adopted to conceal who they are. *See Perfect Pearl*, 887 F. Supp. 2d at 542.

Because Plaintiff's allegations fall outside the narrow scope of § 133, and because no amendment could transform a trademark-based dispute into a deceptive name-use claim, dismissal with prejudice is warranted. Defendants' motion to dismiss Plaintiff's § 133 claim is therefore GRANTED with prejudice.

**D. Unjust Enrichment**

Plaintiff's unjust enrichment claim is dismissed because it is wholly duplicative of its trademark infringement and unfair competition claims. Under New York law, unjust enrichment is a narrow, equitable doctrine that applies only in the absence of an adequate legal remedy. *Corsello v. Verizon N.Y., Inc.,* 18 N.Y.3d 777, 790 (2012) ("[U]njust enrichment is not a catchall cause of action to be used when others fail."). To state a claim, a plaintiff must allege that "(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Reynolds v. Lifewatch, Inc.,* 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015). Even where those elements are pleaded, however, "an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello*, 18 N.Y.3d at 791.

"[C]ourts in this [C]ircuit therefore "frequently dismiss unjust enrichment claims brought in trademark infringement cases" where the claim rests on the same alleged misconduct. *WowWee Grp. Ltd. v. Meirly*, No. 18-CV-706, 2019 WL 1375470, at *8 (S.D.N.Y. Mar. 27, 2019) (collecting cases dismissing duplicative Lanham Act claims); *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (collecting cases dismissing duplicative N.Y. Gen. Bus. Law claims); *Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 538 (S.D.N.Y. 2021) (same); *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 72 (E.D.N.Y. 2017) (same).

Here, Plaintiff's unjust enrichment claim is premised entirely on Defendants' alleged misuse of Plaintiff's marks, goodwill, and customer relationships—the very conduct underlying Plaintiff's Lanham Act and New York common law unfair competition claims. The Complaint does not allege any enrichment independent of the asserted trademark violations, nor does it plead a quasi-contractual or equitable relationship distinct from the alleged tortious conduct. *See*

25

*Corsello*, 18 N.Y.3d at 790 (unjust enrichment applies only where "the defendant has not breached a contract nor committed a recognized tort").

Because Plaintiff has failed to allege how its unjust enrichment claim is not merely duplicative of the other causes of action, dismissal is required as a matter of law. *WowWee,* 2019 WL 1375470, at *8. Defendants' motion to dismiss this claim is therefore GRANTED. Dismissal is without prejudice, as amendment would be appropriate only if Plaintiff can plead a basis for equitable relief independent of its trademark and unfair competition claims.

### E. Motion to Strike

Defendants move to strike paragraphs 42, 43, 44, 50, 54, and 55 of the Complaint. (Dfts. Mem. at 22.) Defendants' motion is denied.

Rule 12(f) authorizes a court to strike matter that is "redundant, immaterial, impertinent, or scandalous," but such motions are generally disfavored and constitute a drastic remedy. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). To prevail, the moving party must show that "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice." *Lynch v. Southampton Animal Shelter Found., Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (quoting *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)).

Defendants fail to satisfy this demanding standard. Paragraphs 42, 43, and 44 allege that Defendants, as former employees of Plaintiff's predecessor, had access to proprietary and confidential information, including customer lists, service contracts, vendor relationships, marketing materials, and internal business operations. (Compl. ¶¶ 42, 43, 44.) Paragraphs 50, 54, and 55 further allege conduct bearing on Defendants' intent and course of conduct—specifically,

26

actions taken after departure that are probative of bad faith, misuse of Plaintiff's business infrastructure, and efforts to exploit Plaintiff's goodwill. (*Id.* ¶¶ 50, 54, 55.)

These allegations are neither immaterial nor impertinent. To the contrary, they bear directly on core issues in this case, including Defendants' knowledge of Plaintiff's marks and business, intent and bad faith, likelihood of confusion, and unfair competition. Allegations concerning access to proprietary information and subsequent competitive conduct are routinely deemed relevant in trademark and unfair competition cases. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012); *Perfect Pearl,* 887 F. Supp. 2d at 542. Defendants also fail to demonstrate prejudice, as they identify no undue burden, delay, or confusion that would result from permitting these allegations to remain in the Complaint, nor any risk of unfair surprise or expansion of discovery beyond issues already central to the case. *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, No. 09 Civ. 3655(LAP), 2009 WL 5088750, at *1 (S.D.N.Y. Dec. 18, 2009) (quoting *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 642 (S.D.N.Y. 2001)). To the extent Defendants dispute the truth, relevance, or weight of these allegations, those arguments are properly addressed through discovery or dispositive motion practice—not under Rule 12(f). *See id.* (Rule 12(f) should not be used as a substitute for Rule 12(b)(6)).

Because paragraphs 42, 43, 44, 50, 54, and 55 are relevant to Plaintiff's claims and Defendants have not shown prejudice sufficient to justify striking them, Defendants' motion to strike is DENIED.

## F. Injunctive Relief

The Lanham Act authorizes courts to grant injunctive relief to prevent trademark infringement, and where a plaintiff demonstrates a likelihood of success on the merits, it is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Injunctive relief remains

available so long as at least one viable underlying claim survives, even where other claims are dismissed. *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 511 F. App'x 81, 85 (2d Cir. 2013).

Here, Plaintiff alleges ongoing and continuing use of the challenged marks in connection with competing services, conduct that—if proven—threatens continuing harm to Plaintiff's goodwill, reputation, and ability to control its marks. (*See generally* Compl.) Such injuries are not readily compensable by monetary damages alone and are the type for which injunctive relief is traditionally available under the Lanham Act. *See* 15 U.S.C. § 1116(a). At this stage, however, the Court does not adjudicate Plaintiff's request for injunctive relief. (Compl. ¶ 87.) The present motion concerns only the sufficiency of the pleadings under Rule 12(b)(6), and "it is well settled that a request for ... injunctive relief is not an independent cause of action" and cannot be determined without a developed factual record. *Budhani v. Monster Energy Co.,* 527 F. Supp. 3d 667, 688 (S.D.N.Y. 2021)

The Court's role at this juncture is limited to determining whether Plaintiff has plausibly alleged entitlement to relief—not whether such relief should be awarded on the merits. *Ashcroft,* 556 U.S. at 678. Whether injunctive relief is ultimately warranted will depend on the development of the factual record and the Court's application of the traditional equitable factors at the appropriate stage of the proceedings.

Nonetheless, because Plaintiff has plausibly alleged trademark infringement under the Lanham Act, its request for injunctive relief remains viable and may be considered upon a proper evidentiary showing.

## G.  Conversion to Summary Judgment (Rule 12(d))

Defendants alternatively ask the Court to convert their Rule 12(b)(6) motion into one for summary judgment under Rule 12(d). (Dfts. Mem. at 6.) That request is DENIED.

28

Rule 12(d) allows conversion only when matters outside the pleadings are presented to and relied upon by the Court, and even then, conversion is discretionary and often inappropriate at the pleading stage. *See* Fed. R. Civ. P. 12(d); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154–55 (2d Cir. 2006). Courts in this Circuit routinely decline to convert motions to dismiss where doing so would short-circuit the ordinary course of pleadings and discovery. *See Kopec v. Coughlin*, 922 F.2d 152, 155–56 (2d Cir. 1991).

Plaintiff expressly objects to conversion, which Defendants invoke in an apparent effort to force an early merits determination. *See Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (conversion improper where the non-movant lacks notice and a reasonable opportunity to develop the record). This case remains at its earliest stage, and Plaintiff has had no opportunity to conduct discovery into Defendants' intent, consumer perception, marketplace conditions, or the extent of actual confusion—each of which bears directly on the claims at issue. Nor do Defendants point to any developed evidentiary record that would justify skipping ahead to summary judgment. To the extent Defendants rely on documents attached to the Complaint, incorporated by reference, or integral to it—such as examples of mark usage or USPTO filings—those materials may be considered on a Rule 12(b)(6) motion without conversion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (integral documents considered without conversion).

Accordingly, because conversion would be premature and inconsistent with the purpose of Rule 12(d), Defendants' request to convert the motion to one for summary judgment is DENIED.

## H. Leave to Amend

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d

Cir. 2007) (citations omitted). When exercising this discretion, courts consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility. *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, the Court will grant Plaintiff leave to file an amended complaint as to those claims dismissed without prejudice. Notwithstanding the above explained deficiencies, Plaintiff could potentially plead facts that cure her complaint's various defects. Although Plaintiff certainly has high hurdles to overcome, leave to amend in this case would not necessarily be futile at this juncture. Furthermore, as this case is still in its infancy, there would be minimal prejudice to Defendants in permitting Plaintiff to amend.

**CONCLUSION**

For the foregoing reasons, the motion to dismiss filed by Defendants Folkes Brothers Home Services LLC, Dustin Folkes, Jr., and Tyler Folkes is GRANTED IN PART and DENIED IN PART.

The motion is DENIED as to Plaintiff Folkes Home Services Heating, Cooling, Plumbing & Electrical, LLC's claims for trademark infringement and unfair competition under Section 43(a) of the Lanham Act, trademark infringement and unfair competition under New York common law, and trademark dilution under New York General Business Law § 360-l. The motion is GRANTED as to Plaintiff's claim under New York General Business Law § 133, which is dismissed with prejudice, and as to Plaintiff's unjust enrichment claim, which is dismissed without prejudice. Defendants' motion to strike is DENIED in its entirety, and Defendants' request to convert the motion to dismiss into one for summary judgment is likewise DENIED.

Plaintiff is granted leave to file an Amended Complaint limited to its unjust enrichment claim on or before February 24, 2026. If Plaintiff fails to do so, that claim will be dismissed with prejudice and Defendants shall file their Answer on or before March 17, 2026. If Plaintiff timely files an Amended Complaint, Defendants shall answer or otherwise respond within twenty-one (21) days of the filing.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 24.

Dated: February 5, 2026
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

31